## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SOFTVIEW LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 10-389-LPS |
| | : | |
| APPLE INC.; AT&T MOBILITY LLC; | : | |
| DELL INC.; HTC CORP.; HTC AMERICA, | : | |
| INC.; EXEDEA, INC.; HUAWEI | : | |
| TECHNOLOGIES CO., LTD.; | : | |
| FUTUREWEI TECHNOLOGIES, INC.; | : | |
| KYOCERA CORP.; | : | |
| KYOCERA WIRELESS CORP.; LG | : | |
| ELECTRONICS, INC.; LG | : | |
| ELECTRONICS USA, INC.; LG | : | |
| ELECTRONICS MOBILECOMM U.S.A., | : | |
| INC.; MOTOROLA MOBILITY INC.; | : | |
| SAMSUNG ELECTRONICS CO., LTD.; | : | |
| SAMSUNG ELECTRONICS AMERICA, | : | |
| INC.; SAMSUNG | : | |
| TELECOMMUNICATIONS AMERICA, | : | |
| LLC; and SONY ERICSSON MOBILE | : | |
| COMMUNICATIONS (USA) INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Steven L. Caponi, BLANK ROME LLP, Wilmington, DE.  Morgan Chu, Samuel K. Lu, Erin McCracken, Dorian S. Berger, and Craig Johnson, IRELL & MANELLA LLP, Los Angeles, CA.
    Attorneys for Plaintiff.

Richard L. Horwitz and David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington, DE.  Josh A. Krevitt, H. Mark Lyon, and Stuart M. Rosenberg, GIBSON DUNN & CRUTCHER LLP, New York, NY and Palo Alto, CA.
    Attorneys for Defendants Apple Inc. and AT&T Mobility LLC.

Steven J. Fineman, RICHARDS, LAYTON & FINGER, P.A.  Wilmington, DE.  James W. Morando and Erik C. Olson, FARELLA BRAUN & MARTEL LLP, San Francisco, CA.
    Attorneys for Defendant Dell Inc.

John W. Shaw, Karen E. Keller, and Jeffrey T. Castellano, SHAW KELLER LLP, Wilmington, DE. Leo L. Lam, Ashok Ramani, and Jesse Basbaum, KEKER & VAN NEST LLP, San Francisco, CA.

     Attorneys for Defendants HTC Corp., HTC America, Inc. and Exedea, Inc.

Frederick Cottrell, III and Anne Shea Gaza, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE. Scott Partridge, Masood Anjom, Jeffrey Sullivan, and Brian Boerman, BAKER BOTTS LLP, Houston, TX and New York, NY.

     Attorneys for Defendants Huawei Technologies Co. and Futurewei Technologies, Inc.

John C. Phillips, Jr., PHILLIPS, GOLDMAN & SPENCE, P.A., Wilmington, DE. Eric C. Cohen and Michael A. Dorfman, KATTEN MUCHIN ROSENMAN LLP, Chicago, IL.

     Attorneys for Defendants Kyocera Corp. and Kyocera Wireless Corp.

Gregory E. Stuhlman, GREENBERG TRAURIG LLP, Wilmington, DE. Herbert H. Finn, Eric J. Maiers, and Barry R. Horwitz, GREENBERG TRAURIG LLP, Chicago, IL.

     Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics Mobilecomm USA Inc.

Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE. William H. Boice, Bonnie M. Grant, and John C. Alemanni, KILPATRICK TOWNSEND & STOCKTON LLP, Atlanta, GA and Winston-Salem, NC.

     Attorneys for Defendant Motorola Mobility Inc.

Adam W. Poff and Monté T. Squire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE. Robert T. Haslam, Michael K. Plimack, and Christine Saunders Haskett, COVINGTON & BURLING LLP, San Francisco, CA.

     Attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE. John H. McDowell, Jr., Benjamin J. Setnick, and James V. Mahon, ANDREWS KURTH LLP, Dallas, TX and Durham, NC.

     Attorneys for Defendant Sony Mobile Communications (USA) Inc.

## MEMORANDUM OPINION

July 26, 2012
Wilmington, DE.

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Presently before the Court are Defendants' motions to stay litigation pending

reexamination proceedings before the Patent Office, as well as Defendants' motions to dismiss

Plaintiff's indirect and willful infringement allegations from the Fourth Amended Complaint.

For the reasons explained below, the Court will deny Defendants' motion to stay, and will grant-

in-part and deny-in-part Defendants' motions to dismiss. The Court also addresses certain

procedural issues.

## II.   BACKGROUND

### A.    The Patents-in-Suit

United States Patent No. 7,461,353 ("the '353 patent") is entitled "Scalable Display of

Internet Content on Mobile Devices," and issued to inventors Gary B. Rohrabaugh and Scott A.

Sherman on December 2, 2008. United States Patent No. 7,831,926 ("the '926 patent") shares

the same title and inventors, and issued on November 9, 2010, during this litigation.

### B.    Procedural History

#### 1.    SoftView's Complaints

Plaintiff SoftView LLC ("SoftView") filed suit against Defendants Apple Inc. ("Apple")

and AT&T Mobility LLC ("AT&T") in May 2010, alleging infringement of the '353 patent.

(D.I. 1)  On December 3, 2010, SoftView filed the First Amended Complaint, further alleging

infringement of the '926 patent by Apple and AT&T.  (D.I. 20; D.I. 27)  On September 30, 2011,

SoftView filed the Second Amended Complaint, asserting the '353 and '926 patents against the

following additional Defendant groups: Dell Inc. ("Dell"); HTC Corp., HTC America, Inc., and

1

Exedea, Inc. ("HTC"); Huawei Technologies Co., Ltd., Huawei Technologies USA, Huawei

Device USA Inc., and Futurewei Technologies, Inc. ("Huawei"); Kyocera Corp. and Kyocera

Wireless Corp. ("Kyocera"); LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics

MobileComm U.S.A., Inc. ("LG"); Motorola Mobility Inc. ("Motorola"); Samsung Electronics

Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC

("Samsung"); and Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile

Communications (USA) ("Sony") (collectively, the "Android Defendants"). (D.I. 61; D.I. 108)

SoftView filed a Third Amended Complaint in January 2012 (D.I. 222), and filed the Fourth

Amended Complaint on March 29, 2012. (D.I. 254) (hereinafter, "Fourth Amended Complaint"

or "4AC").

The Fourth Amended Complaint alleges direct infringement of the patents-in-suit under

35 U.S.C. § 271(a) against Defendants Apple, AT&T, Dell, HTC, Huawei, Kyocera, LG,

Motorola, Samsung, and Sony. (4AC ¶¶ 36, 54) The Fourth Amended Complaint also alleges

willful infringement, as well as induced and contributory infringement of the patents-in-suit

under 35 U.S.C. §§ 271(b) and (c), respectively, against all Defendants. (*Id.* ¶¶ 50, 68, 49, 67,

38, 56)

## 2.  Apple's Requests for Reexamination Before the PTO

On May 20 and 23, 2011, Apple submitted requests for *inter partes* reexamination of the

'353 and '926 patents. In August 2011, the PTO granted Apple's request and initiated

reexamination with respect to most claims of both patents-in-suit, but declined to reexamine

those claims reciting a "vector" limitation. (D.I. 160 at 3-4) In April 2012, Apple filed a request

for *ex parte* reexamination of the "vector" claims. (D.I. 346)

2

### 3. Defendants' Motions to Stay and Motions to Dismiss

In November 2011, Defendants filed and/or joined motions to stay the instant litigation

pending conclusion of the *inter partes* reexamination proceedings before the Patent Office. (D.I.

150; D.I. 153; D.I. 159)[1] Defendants also filed and/or joined motions to dismiss SoftView's

allegations of indirect and willful infringement pursuant to Federal Rule of Civil Procedure

12(b)(6). (D.I. 271; D.I. 273; D.I. 276; D.I. 282; D.I. 275; D.I. 277; D.I. 279; D.I. 278; D.I. 280)

The Court held a hearing on Defendants' motions on May 3, 2012.[2] (*See* D.I. 369) ("Tr.")

## III. LEGAL STANDARDS

### A. Motion to Stay Litigation

Whether or not to stay litigation pending a PTO reexamination is a matter left to the

Court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998). In

exercising this discretion, the Court must weigh the competing interests of the parties and

attempt to maintain an even balance. *See Landis v. North American Co.*, 299 U.S. 248, 255

(1936). The factors courts typically consider in deciding how to exercise this discretion include:

(1) whether a stay will simplify the issues and trial of the case; (2) the stage of litigation,

including whether discovery is complete and a trial date has been set; and (3) whether a stay

would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See,*

*e.g., St. Clair Intellectual Property v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30,

---

[1] Defendants also filed motions to sever pursuant to 35 U.S.C. § 299. (D.I. 143; D.I. 168; D.I. 185; D.I. 148; D.I. 156; D.I. 168; D.I. 172; D.I. 185; D.I. 211; D.I. 153) The Court granted these motions, granting separate infringement trials for each Defendant group. (D.I. 354)

[2] Following the hearing, the Court ordered the parties to submit supplemental letter briefs addressing various issues relevant to Defendants' motions to stay. (D.I. 354) Such briefing was completed on May 29, 2012. (*See* D.I. 366; D.I. 367)

2003).

## B. Rule 12(b)(6) Motions to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

4

conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV.    DISCUSSION

### A.    Defendants' Motion to Stay Litigation Pending Completion of the Apple Reexamination Proceedings

Having reviewed the parties' arguments and evidence, the Court concludes that a stay is not warranted under the particular circumstances of this case, for the reasons explained below.

#### 1.    Simplification of the Issues

The scope of the reexamination proceedings currently before the PTO is limited to potential invalidity issues arising under only Sections 102 and 103. By contrast, Defendants have disputed infringement and invalidity under 35 U.S.C. §§ 101, 102, 103, and 112. (*See, e.g.,* D.I. 288) Some Defendants also have raised the equitable defenses of laches, waiver, estoppel, acquiescence, and/or unclean hands. (*See, e.g.,* D.I. 291 ¶ 75) Because the scope of the issues to be resolved during litigation substantially exceeds the scope of the issues that can be resolved during the reexamination proceedings, this factor neither favors nor disfavors a stay. *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.,* 2010 WL 4823393, at \*2 (D. Del. Nov. 22, 2010).

Although Defendants argue that all or most of the claims of the patents-in-suit may be modified or cancelled during reexamination, thus potentially simplifying or eliminating the need for trial, SoftView correctly notes that 14 of the 20 claims asserted against Apple and AT&T presently stand confirmed by the Patent Office as patentable over the prior art identified by Apple in its request for reexamination. Additionally, SoftView has represented to the Court that it will

5

not amend any of its asserted claims during the reexamination proceedings, further reducing the risk that any litigation efforts will be nullified or wasted as a consequence of subsequent amendments.

Finally, the limited scope of the Android Defendants' willingness to be bound by the outcome of the reexamination proceedings disfavors a stay. These Defendants have indicated to the Court that they are willing to be bound only by the PTO's final determinations with respect to the validity of the patents-in-suit based on the particular prior art references, and combinations thereof, specifically asserted by Apple during the reexamination proceedings.[3] SoftView notes that, under Defendants' proposal (whereby the Court would grant a stay), the Android Defendants would remain free to assert additional prior art references at trial, and/or different combinations of the same prior art references now being asserted by Apple in the reexamination proceedings. Defendants also refuse "to be bound by any PTO determination that a given reference does not qualify as prior art" and would "not be bound by these agreements if Apple and SoftView settle their dispute prior to the final disposition of the *inter partes* reexaminations." (D.I. 367 at 1) Defendants are within their rights to adhere to these positions, but they reduce the potential for simplification available from a stay under the circumstances presented here. On the whole, the potential simplification of the issues does not favor a stay.

## 2.    Stage of Litigation

The present litigation remains at a relatively early stage. The Court has not set a trial date, the parties have taken only limited discovery, and the claim construction process has not yet

___

[3]Defendants have also agreed, if the Court grants a stay, not to file additional requests for reexamination.

6

begun. Although the relatively early stage of the litigation often favors a stay, in this particular case the economies that might otherwise flow from granting a stay early in a case are somewhat offset by the substantial resources already incurred by both the parties and the Court in this litigation. Substantial time and resources have been devoted in this case to scheduling and the resolution of discovery disputes, as well as Defendants' motions to sever, stay, and dismiss.

Also, the early stage of the litigation must be balanced against the stage of the reexamination proceedings. Like the litigation, the *inter partes* reexamination proceedings remain at an early stage, having been commenced approximately a year after the litigation began. Apple's *ex parte* request for reexamination was filed even more recently, in April 2012. The reexamination proceedings will likely require several years to reach a final resolution. *See Life Technologies Corp. v. Illumina, Inc.*, 2010 WL 2348737, at \*2 (D. Del. June 7, 2010) ("[R]eexaminations . . . are likely to take 6.5 to 8 years to reach a final decision."). Thus, the Court concludes that the relative status of the litigation and reexamination proceedings does not favor a stay.

### 3.    Undue Prejudice

Finally, granting a stay would unduly prejudice Softview by denying SoftView of its chosen forum, thereby providing Defendants with a clear and unwarranted tactical advantage. SoftView chose to file this litigation, in this District, to resolve its allegations of patent infringement, including any potential validity challenges to the patents-in-suit. Apple did not file its request for *inter partes* reexamination until approximately one year after this litigation began. Staying this litigation in favor of the reexamination proceedings would provide Apple with its choice of forum without any compelling justification for doing so. *See generally Holmes Group,*

7

*Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002) ("The plaintiff is the master of the complaint [and] the well-pleaded complaint rule enables him . . . to have the cause heard in [the forum of his choice].") (internal quotation marks omitted).

Moreover, given the early stage of the reexamination, and the average duration for reexaminations (including appeals), a stay in this case would likely last several years; resuming litigation after a protracted stay could raise issues with stale evidence, faded memories, and lost documents. Although Defendants contend that the evidence in this case is based on source code that can be preserved easily, SoftView must also rely, at least to some extent, on evidence that can only be acquired through witnesses, whose memories will inevitably fade and/or who may become more difficult to find over time. Conversely, the evidence that Defendants must rely on to prove invalidity is primarily prior art references, which seemingly will not change and is less likely to become more difficult to locate with the passage of time.

Accordingly, the Court will deny Defendants' motion to stay litigation.

## B. Defendants' Motions to Dismiss SoftView's Indirect and Willful Infringement Allegations

Defendants seek dismissal of the indirect and willful infringement allegations set forth in SoftView's Fourth Amended Complaint based on three related grounds. First, Defendants contend that SoftView's indirect and willful infringement allegations should be dismissed for failure to state a claim, because SoftView has not plausibly alleged Defendants' pre-suit knowledge of the patents-in-suit. Second, Defendants argue that service of the initial pleading identifying the patents-in-suit is insufficient to support a claim for indirect and willful infringement arising from Defendants' post-filing conduct. Third, and finally, Defendants

contend that SoftView's willful infringement allegations relating to Defendants' post-filing conduct should be dismissed because SoftView has not sought a preliminary injunction to enjoin Defendants' allegedly infringing post-filing activities. The Court addresses each of these arguments in turn below.

### 1. Whether SoftView Has Plausibly Alleged Defendants' Pre-Suit Knowledge of the Patents-in-Suit

The parties' initial dispute concerns whether SoftView has plausibly alleged pre-suit knowledge of the patents-in-suit in the Fourth Amended Complaint. Because SoftView's allegations on this issue differ slightly with respect to various Defendants, the Court will address each Defendant group separately.

#### a. AT&T

SoftView alleges three separate bases for AT&T's pre-suit knowledge of the '353 patent. First, SoftView alleges that AT&T became aware of the '353 patent through its subsidiary, BellSouth Intellectual Property Corp., which previously had cited the published application of the parent application of the '353 patent during the prosecution of one of its own patents. (4AC ¶ 40) Second, SoftView alleges that AT&T also acquired pre-suit knowledge of the '353 patent through its connection with inventor and SoftView General Manager Gary Rohrabaugh. (*Id.*) Third, and finally, SoftView contends that AT&T learned of the '353 patent from Apple in the course of its relationship with Apple as the exclusive seller of the iPhone from June 2007 to March 2009, based on Apple's previous discussions with SoftView involving the '353 patent. (*Id.*) SoftView similarly alleges that AT&T also learned of the '926 patent through its exclusive relationship with Apple. (*Id.* ¶ 58)

9

AT&T's motion presents a close call. The Court agrees with AT&T that none of the allegations standing alone adequately alleges that AT&T was aware of the patents-in-suit prior to the initiation of this litigation. Several steps of speculation are required to infer actual knowledge by AT&T of the '353 patent from the fact that an AT&T subsidiary cited the published application of the parent application of the '353 patent. SoftView's vague allegation regarding AT&T's unspecified relationship with SoftView inventor and General Manager Gary Rohrabaugh, without more, is an insufficient basis from which to reasonably infer that AT&T learned of the '353 patent. *See Bosch Healthcare Systems, Inc. v. Express MD Solutions, LLC*, 2012 WL 2803617, at *3 (N.D. Cal. July 10, 2012) (deeming inadequate, for willful infringement claim, allegation that "[p]rior to the filing of this suit, [Plaintiff] had informed [Defendant] of the Patents-in-Suit and [Defendant's] infringement of those patents"). AT&T's relationship with Apple, as the exclusive seller of the iPhone prior to this litigation, is also inadequate as a sole basis from which to infer that Apple informed AT&T of the patents-in-suit.

Nonetheless, SoftView has not merely alleged only one of these inadequate allegations, but all three. Taken in combination, the Court concludes that SoftView has alleged a plausible basis from which one might reasonably infer that AT&T had knowledge of the patent-in-suit prior to this litigation. Accordingly, the Court will deny the motion to dismiss the indirect and willful infringement allegations against AT&T.

b.    Kyocera

SoftView alleges that Kyocera obtained pre-suit knowledge of the '353 patent in May 2010 as a result of the media publicity surrounding the initial lawsuit filed against Apple and AT&T. According to SoftView, "[n]ews stories about the litigation and the '353 patent were

10

published on major Web sites including CNET.com, PCMag.com, IP360.com, and TechCrunch.com." (4AC, D.I. 254 ¶ 44) SoftView thus contends that Kyocera became aware of the '353 patent because the "publicity surrounding the initial filing of this action against Apple Inc. and AT&T creates a reasonable inference that a sophisticated company with similar business interests as the original Defendants would learn of that filing and thereby gain knowledge of SoftView's patents." (D.I. 299 at 3) The Court disagrees. SoftView's allegations involving media publicity do not support a reasonable inference that Kyocera learned of the '353 patent. The mere fact that SoftView's lawsuit against Apple and AT&T was reported in certain media outlets does not, by itself, plausibly suggest that Kyocera would have been aware of those particular media reports, particularly given the sheer number and frequency of patent lawsuits asserted against smartphone manufacturers.[4] The Court concludes that SoftView's allegations concerning media publicity do not plausibly allege pre-suit knowledge of the '353 patent by Kyocera.

c.    RPX Defendants

For the remaining moving Defendants (collectively, the "RPX Defendants), SoftView commonly alleges that each Defendant acquired pre-suit knowledge of the '353 patent as a result of (1) media publicity surrounding the initial filing against Apple and AT&T, and (2) corporate membership in RPX Corporation, a defensive patent aggregation service with which SoftView

---

[4]Moreover, as SoftView has alleged, AT&T was the exclusive seller of Apple's iPhone prior to the initiation of this lawsuit, and SoftView did not seek to add the Android Defendants to this litigation until almost a year after it filed suit against Apple and AT&T. Hence, even if the Android Defendants had been aware of any headlines concerning the lawsuit against Apple and AT&T, SoftView's decision initially to sue only Apple and AT&T could have suggested to a reasonable observer that the lawsuit implicated features unique to the iPhone.

had previously had discussions regarding potentially licensing the SoftView patent family, including both patents-in-suit.[5] SoftView contends that these RPX Defendants also acquired pre-suit knowledge of the '926 patent through their relationship with RPX.

SoftView's allegations concerning media publicity are largely duplicative of those asserted against Kyocera. For the same reasons discussed above, the Court finds those allegations insufficient to plausibly allege pre-suit knowledge by the RPX Defendants of the '353 patent.

However, the Court concludes that SoftView has plausibly alleged pre-suit knowledge of both the '353 and '926 patents based on the RPX Defendants' relationship with RPX. Specifically, SoftView alleges in its Fourth Amended Complaint that (1) the various RPX Defendants have been members of the RPX service (beginning on various dates unique to each Defendant), (2) RPX provides its member companies with regular updates about patents that might be of concern to them, and (3) SoftView disclosed its patents and explained how and why they are infringed to RPX during negotiations in May 2009.[6] SoftView further explains that because the "purpose of [RPX] was to obtain patent rights for its members, it is entirely plausible – indeed, likely – that the Company would have identified the SoftView patents to [its member companies], as it did to at least one other Defendant (Apple). [RPX] would not pursue a purchase of the SoftView patents if they were not of interest to its members, and the Company

_____

[5]SoftView also asserts additional allegations unique to certain RPX Defendants.

[6]Although the various RPX Defendants became RPX members at different times, with some joining before and others joining after the commencement of this litigation against them, in the Court's view these differences do not materially impact the analysis, as the Court finds it plausible that RPX – given its business model – would have informed both its existing and potential new clients of the SoftView patents.

12

presumably determines what is of interest to its members by communicating with them." (D.I.
299 at 10) The Court agrees with SoftView that the RPX Defendants' relationship with RPX, in
light of RPX's business model, provides a plausible basis for reasonably inferring that the RPX
Defendants became aware of both patents-in-suit.[7]

Accordingly, because the Court concludes that the RPX Defendants' membership in
RPX's defensive patent aggregation service provides a plausible basis for alleging pre-suit
knowledge of both patents-in-suit by those entities, the Court will deny the RPX Defendants'
motions to dismiss for lack of pre-suit knowledge.

### 2. Whether Knowledge of the Patents-in-Suit First Obtained from a Complaint May Support a Claim for Post-Filing Indirect Infringement

Because the Court has concluded that SoftView failed to adequately allege pre-suit
knowledge of the patents-in-suit by Defendant Kyocera, the Court must further consider whether
SoftView has sufficiently stated a claim in connection with Kyocera's post-filing conduct for
purposes of indirect infringement.

Defendants have argued that "[b]oth indirect and willful infringement require pre-suit
knowledge of the patent," as it is not "sufficient to plead indirect infringement based on post-
filing knowledge of the patents-in-suit." (D.I. 274 at 2, 5) According to Defendants, in order to
sufficiently plead a claim for indirect infringement, SoftView must allege in its complaint that
Kyocera, for example, "had knowledge of the patents-in-suit *before* receiving SoftView's

---

[7]Although the '926 patent did not issue until November 2010 – during the pendency of this
litigation – the Court finds it plausible that the RPX Defendants would have monitored the status
of the SoftView patent family once a member of that family had been identified by RPX as a
potential threat that might be asserted against them.

13

*original* Complaint." (D.I. 274 at 6, 9) In response, SoftView contends that "[t]he filing of a complaint alleging infringement of a patent provides a defendant with knowledge of that patent, and thus supports a claim of indirect infringement after the filing date." (D.I. 298 at 1-2)

On this issue there is divided precedent in this District, and both parties have cited case law in support of their respective positions.[8] On balance, the Court agrees with SoftView's position that the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date. *See Apple Computer, Inc. v. Unova, Inc.*, 2003 WL 22928034, at *5 (D. Del. Nov. 25, 2003) ("In its Amended Complaint, Apple has alleged that, since the initial pleading, Intermec and Unova were aware of Apple's patents. In this regard Apple has plead a claim for inducement of infringement and contributory infringement."). The Court is not persuaded by AT&T's arguments that SoftView was required to allege "knowledge of the patents-in-suit prior to being served with the *original* Complaint" in this action. (D.I. 274 at 5) (emphasis added) In the Court's view, an accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect

---

[8]Defendants cite *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010), and *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 n.1 (D. Del. 2009), for the proposition that "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." (D.I. 271 at 12) Conversely, SoftView cites *Walker Digital, LLC v. Facebook, Inc.*, No. 11-313-SLR, slip. op. at 10-11 (D. Del. Apr. 4, 2012), *Apeldyn Corp. v. Sony Corp.*, No. 11-440-SLR, slip op. at 9 (D. Del. Apr. 4, 2012), and *Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*, No. 10-666-SLR, 2011 WL 941197, at *4 (D. Del. Mar. 16, 2011), for the proposition that "all defendants will be deemed to have knowledge of the [asserted] patent as of the date the complaint was filed." (D.I. 299 at 13)

infringement is entitled to recover for any post-filing indirect infringement of those patents.[9]

Accordingly, the Court will deny Defendants' motions to dismiss to the extent that they

seek dismissal of SoftView's indirect infringement allegations based on post-filing conduct.

### 3. Whether Willful Infringement Requires Pre-Suit Knowledge and/or Requires a Patentee to Seek a Motion for a Preliminary Injunction to Enjoin Defendants' Post-Filing Conduct

In *In re Seagate Tech, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc), the Federal Circuit

stated:

> [A] willfulness claim asserted in the original complaint must
> necessarily be grounded exclusively in the accused infringer's pre-
> filing conduct. By contrast, when an accused infringer's post-filing
> conduct is reckless, a patentee can move for a preliminary injunction,
> which generally provides an adequate remedy for combating post-
> filing willful infringement. A patentee who does not attempt to stop
> an accused infringer's activities in this manner should not be allowed
> to accrue enhanced damages based solely on the infringer's post-
> filing conduct.

*Id.* at 1374 (internal citations omitted). Defendants argue that this language in *Seagate* requires

pre-suit knowledge in order to state a claim for willful infringement. Defendants further contend

that *Seagate* requires dismissal of SoftView's willful infringement claims also because SoftView

has not sought a preliminary injunction to enjoin Defendants' allegedly willfully infringing post-

filing conduct. The Court will address each of these arguments in turn.

### a. Kyocera

*Seagate* implies that willful infringement allegations based only on post-filing conduct

are inadequate. Thus, the Court's prior conclusion that SoftView has failed to plausibly allege

---

[9]Defendants' position would seem to have the effect of prohibiting patentees from stating a claim for indirect infringement when an assert patent is issued on the same date the lawsuit is filed and when an additional patent is issued during the pendency of litigation.

pre-suit knowledge of the patents-in-suit by Kyocera leads to the conclusion that SoftView's willful infringement allegations against Kyocera should be dismissed. However, the Court's dismissal will be without prejudice.

b.    RPX Defendants and AT&T

As SoftView has adequately alleged pre-suit knowledge of the patents-in-suit by the RPX Defendants and AT&T, the remaining issue with respect to these Defendants is whether SoftView's failure to seek a preliminary injunction is fatal to its claim for willful infringement, to the extent it seeks to recover for willful infringement occurring after the initiation of suit against these Defendants. The RPX Defendants and AT&T contend that *Seagate* requires such dismissal. (D.I. 274 at 10; D.I. 271 at 13) SoftView responds that *Seagate* does not impose any such rule, particularly where, as here, the patentee is a non-practicing entity and less likely to succeed in securing injunctive relief. (D.I. 298 at 10) Again, there appears to be divided precedent on this issue, as both sides have cited cases in support of their respective positions.

On balance, the Court agrees with SoftView that *Seagate* does not require dismissal of SoftView's willful infringement allegations against the RPX Defendants or AT&T, even though SoftView did not seek a preliminary injunction. The Court agrees with SoftView that *Seagate* states only that a patentee cannot recover enhanced damages based **solely** on an accused infringer's post-filing conduct where the patentee has not sought a preliminary injunction. However, as already explained, SoftView's willful infringement claims against the RPX Defendants and AT&T are not based solely on these Defendants' post-filing conduct, but are also based on their pre-filing conduct, including the plausible allegations that the RPX Defendants became aware of the patents-in-suit prior to litigation through their relationship with RPX.

16

Moreover, the language in *Seagate* on which Defendants rely only addresses the availability of enhanced damages; it does not address whether other relief, such as attorneys fees, may be available under the instant circumstances, if willful infringement is eventually proven. *See* 35 U.S.C. § 285; *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372 (Fed. Cir. 2009) ("Section 285 authorizes the court in exceptional cases to award reasonable attorney fees to the prevailing party. Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement.") (internal citation omitted).[10] Thus, dismissal of SoftView's willful infringement allegations against the RPX Defendants and AT&T is unwarranted.[11]

## C.    Other Procedural Issues

### 1.    Pre-Trial Coordination and Separate Civil Action Numbers

The Court previously granted Defendants' motions to sever pursuant to 35 U.S.C. § 299. All parties agree that the pre-trial proceedings may be coordinated by preserving the deadlines and discovery limits contained in the existing scheduling order (D.I. 250), and the Court will therefore coordinate the pre-trial proceedings accordingly. The Court also will assign separate

---

[10]The Court does not decide at this time whether or to what extent SoftView is entitled to recover enhanced damages should it prevail on the issue of willful infringement at trial.

[11]HTC appears to argue additionally that although "the filing of a complaint may be enough to show that a defendant has knowledge of an asserted patent, that fact alone does not support the requisite intent for indirect infringement." (D.I. 344 at 3) To the extent that HTC is criticizing SoftView's allegations of Defendants' intent as lacking sufficient detail, the Court is unconvinced. Even under the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b), "intent, knowledge, and other conditions of a person's state of mind may be alleged generally." *See also Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003) ("Willfulness does not equate to fraud, and thus, the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b).").

civil action numbers to each of the severed actions between SoftView and each Defendant group, as requested by the parties. As also requested by the parties, AT&T will be joined to the individual actions involving Apple, HTC, Huawei, LG, Samsung, Dell, Motorola, and Sony (i.e., all but Kyocera). (D.I. 366 at 3; D.I. 367 at 5)

### 2. Consolidated Invalidity Trial

The parties continue to disagree over whether the Court retains the discretion to hold a consolidated invalidity trial. Specifically, Defendants oppose SoftView's request that the Court conduct a single, consolidated invalidity trial. The Court will reserve decision on this issue until a later stage of the proceedings.

### 3. Request to Redact Transcript

On June 20, 2012, SoftView filed a motion to redact the electronic transcript of the oral argument that the Court had held on May 3, 2012. (D.I. 395) Dell opposes the motion. (D.I. 408) The Court will deny SoftView's motion.

"[T]he party seeking the closure of a hearing or the sealing of part of the judicial record bears the burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (internal quotation marks omitted). SoftView has failed to show that the material it seeks to redact – multiple lines found on 15 different pages of the 98-page transcript – is the kind of information that courts will protect or that disclosure will seriously injure SoftView. This is particularly so given that the May 3, 2012 hearing was open to the public and no party requested at the time that any portion of it be sealed. Additionally, SoftView waited until after the transcript had already been made available to the

18

public in the Clerk's Office before seeking redaction. For at least these reasons, even if

SoftView had met its burden (and it has not), the Court would exercise its discretion to balance

the factors in favor of public access to the transcript, which is a court document. *See Pansy v.*

*Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994); *see also Mosaid Technologies, Inc. v.*

*LSI Corp.*, ___ F. Supp.2d ___, 2012 WL 2951389, at *4 (D. Del. July 20, 2012) (Burke, M.J.)

("Now that the Court is faced with the question of sealing a *judicial record*, as opposed to

discovery materials, the parties cannot rely solely on a blanket protective order to justify sealing

of a presumptively public transcript of arguments regarding the substantive resolution of this

case.").

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motions to stay the litigation,

and will grant-in-part and deny-in-part Defendants' motions to dismiss SoftView's indirect and

willful infringement allegations. The Court will also coordinate pre-trial proceedings in the

severed actions and denies SoftView's request to redact a transcript of a hearing. An appropriate

Order follows.